

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALSHONETTE T. PLUMMER )
)
Plaintiff, ) Civil Action No.: 05 C 4956
)
v. ) Suzanne B. Conlon, Judge
)
JOHN E. POTTER, POSTMASTER )
GENERAL OF THE U.S. POSTAL SERVICE )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Alshonette Plummer is an African-American postal worker. She filed suit against the postmaster general for racial discrimination pursuant to Title VII. The postmaster moves for summary judgment.

## FACTS

The facts are undisputed unless otherwise noted. Plummer was employed as a city carrier at the Oak Brook, Illinois post office. On December 17, 2003, she sustained a work-related back injury. Def. Facts ¶ 3. Plummer's doctor determined that she could not return to work until January 19, 2004. Specifically, from December 29 to January 12, she was unable to return to work because she could not drive, kneel, or perform simple grasping. The parties dispute whether Plummer's doctor allowed her to drive between January 12 and January 19. According to Plummer, a handwritten note from her doctor on January 12 establishes that there was no driving restriction at that time. Pl. Facts ¶¶ 6-8. However, the postmaster contends a letter from Plummer's doctor establishes the driving restriction continued through January 19. Def. Ex. 4.

On January 14 and 15, 2004, postal inspectors videotaped Plummer carrying garbage from her home to trash cans next to her garage, bending over to pick up trash from the ground, carrying bags from her car to her home, sweeping her garage, and driving. Pl. Ex. 2. After Plummer returned to work, she was interviewed by postal inspectors on January 23, 2004. During that interview, she told postal inspectors that she did not drive during the week of January 12-16 due to pain medication. When confronted with the video evidence, she did not deny that she drove during that period. Pl. Ex. 4 at 4. Postal inspectors interviewed Plummer's doctor and showed her the video. The doctor's notes and statements suggested that she believed Plummer's activities in the video were contrary to her medical restrictions. Def. Ex. 7 at 2.

On January 23, 2004, Plummer's supervisor placed her on off-duty status without pay. Her supervisors, Steve Gomoll and Elizabeth Marland, gave her a notice of removal from the postal service on February 25, 2004. Def. Ex. 7 at 4. They relied on the videotape showing Plummer engaging in activities they believed were contrary to her medical restrictions. Her supervisors also relied on the written notes and statements of Plummer's doctor during an interview with postal inspectors. *Id.* at 2.

Plummer filed a grievance with the postal workers union appealing Gomoll and Marland's termination decision. A dispute resolution team consisting of union representative Jim Ballou and postal service representative Edward Miller reduced Plummer's punishment to a long term suspension. Pl. Ex. 4 at 5. The dispute resolution team found that her doctor's notes and statements concerning the surveillance video were vague, so the team independently interviewed the doctor to clarify her position. Pl. Ex. 4 at 5. The doctor did not believe that the activity captured in the video was contrary to Plummer's medical restrictions. *Id.* Therefore, the

team found that Plummer's supervisors failed to engage in a thorough and independent investigation. *Id.* However, the team concluded Plummer lied to postal investigators when she told investigators she did not drive during the week of January 12 to January 16. *Id.* On that basis, the team found the long term suspension she had served was adequate punishment. *Id.* at 6. The dispute resolution team reinstated Plummer on May 22, 2004. Her suspension lasted approximately 120 days.

## ANALYSIS

Plummer offers no direct evidence of racial discrimination. Indirect discrimination under Title VII is established by using the burden shifting scheme announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Plummer must first establish the four elements of a prima facie discrimination case: (1) she is a member of a protected class; (2) her performance met the postal service's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated postal employees outside her protected class received more favorable treatment. *Id.* If she meets this burden, the postmaster must offer a non-discriminatory reason for the adverse employment action. *Id.* Finally, she must show that the proffered reason for the adverse action is a pretext for discrimination. *Id.* The postmaster's summary judgment motion will be granted only if there is no issue of material fact that would permit a jury to return a verdict in Plummer's favor. *Id.* The facts must be viewed in the light most favorable to Plummer and all reasonable inferences drawn in her favor. *Id.*

The postmaster argues that Plummer fails to establish a *prima facie* case because she does not identify similarly situated postal employees who were treated more favorably based on race.

3

The postmaster does not contest that Plummer established the other three parts of a *prima facie* case. Failure to establish all four elements of a *prima facie* case warrants summary judgment. *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). Plummer responds that four similarly situated Caucasian employees of the Oak Brook post office were treated more favorably by the postal service:[1]

1. Jerry Patchett told a fellow postal employee he was going to "shoot everybody" at the post office. Def. Ex. 18 at 2. Supervisors Pam Shubinski and Elizabeth Marland issued Patchett a notice of removal. *Id.* at 5. After union grievance procedures, Patchett, Steve Gomoll and union representative Eric Smith entered into a last chance settlement agreement reducing his penalty to a 45 day suspension. *Id.*

2. Robert Weston solicited Christmas tips from several customers on his route. Supervisors Steve Gomoll and Elizabeth Marland issued Weston a notice of removal. *Id.* at 13. Marland and union representative Eric Smith settled Weston's union grievance by reducing his punishment to a letter of warning. *Id.* at 15.

3. Dean Allpow was issued a notice of removal by supervisors Pam Shubinski and Elizabeth Marland for violating a last chance settlement agreement requiring Allpow to maintain an acceptable attendance record. *Id.* at 16-18. Allpow filed a union grievance. Supervisor Steve Gomoll and union representative Eric Smith reduced Allpow's punishment to a 30 day suspension. *Id.* at 20.

4. Gordon Richardson was issued a notice of removal by supervisors Letitia Ghant and Elizabeth Marland for theft of more than 25,000 pieces of mail. *Id.* at 32-34. Richardson retired before his removal could be affected by Marland. *Id.* 35. Richardson did not file a union grievance.

Similarly situated employees must be disciplined differently by the same supervisor, *Little*, 369 F.3d at 1012, for engaging in similar – not identical – conduct in order to support a reasonable inference of discrimination. *Ezell v. Potter*, 400 F.3d 1041, 1049-50 (7th Cir. 2005).

---

[1] Plummer identifies additional postal employees in her complaint; others are mentioned elsewhere in the record. However, she opposes summary judgment using only these four employees.

4

None of the employees identified by Plummer in her summary judgment response meet this standard. The purportedly similarly situated Caucasian employees and Plummer were treated identically by Oak Brook post office supervisors. Plummer was issued a notice of removal for engaging in activities that were, in her supervisors' view, contrary to her medical restrictions. Like Plummer, the four Caucasian postal workers received notices of removal for their misdeeds. Since the discipline issued by the postal service against each of the four postal workers and Plummer was the same – notices of removal – no disparate treatment occurred at the hands of their supervisors, regardless of their conduct.

Plummer argues that her supervisors' reason for disciplining her was wrong because she was not restricted from driving at the time postal investigators videotaped her. However, this argument – based on the factual dispute – puts the cart before the horse. The validity of the stated reason for the discipline is relevant to determine whether the adverse employment action was a pretext for discrimination. *Little*, 369 F.3d at 1012. Because Plummer cannot establish a *prima facie* case, the pretext inquiry is not reached. *Id.*

Plummer argues that the disparate results ultimately obtained by Patchett, Weston and Allpow after they filed union grievances infer racial prejudice. However, her punishment was ultimately decided by union representative Jim Ballou and postal service representative Edward Miller – individuals who were not involved in the resolution of the union grievances filed by Patchett, Weston and Allpow. The decisions reached by different union and postal service representatives in resolving union grievances shed no light on the decision reached in Plummer's case. *Id.*

## CONCLUSION

Plummer fails to establish a *prima facie* case of racial discrimination. The postmaster is entitled to summary judgment as a matter of law.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

May 30, 2006